No. 24-5071
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

REPUBLICAN NATIONAL COMMITTEE, et al.,
*Plaintiffs/Appellants,*

v.

CARI-ANN BURGESS, in her official capacity as the Washoe County Registrar of Voters, et al.,
*Defendants/Appellees,*

VET VOICE FOUNDATION, et al.
*Intervenor-Defendants/Appellees.*

_____

On Appeal from the United States District Court
for the District of Nevada, Case No. 3:24-CV-00198
Hon. Miranda M. Du
_____

DEFENDANT/APPELLEE NEVADA SECRETARY OF STATE'S
SUPPLEMENTAL BRIEF
_____

AARON D. FORD
Attorney General
HEIDI PARRY STERN (Bar No. 8873)
Solicitor General
DANIEL R. BRADY (Bar No. 15508)
Deputy Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
(702) 486-3420
hstern@ag.nv.gov
drbrady@ag.nv.gov

*Attorneys for Defendant/Appellee Nevada Secretary of State*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

STATEMENT OF THE CASE..................................................................................2

SUMMARY OF THE ARGUMENT ........................................................................3

ARGUMENT .............................................................................................................5

    I.     Plaintiffs/Appellants Do Not Adequately Plead Associational Standing, Even Under *Bost* .................................................................5

    II.    This Court Should Continue to Defer Submission of this Appeal Pending a Decision from the United States Supreme Court in *Watson*........................................................................................7

CONCLUSION..........................................................................................................9

STATEMENT OF RELATED CASES...................................................................10

CERTIFICATE OF COMPLIANCE.......................................................................11

# TABLE OF AUTHORITIES

Page

**Cases**

*Bost v. Illinois State Board of Elections*,
 146 S. Ct. 513 (2026) ................................................................................ passim

*Donald J. Trump for President, Inc. v. Cegavske*,
 488 F. Supp. 3d 993 (D. Nev. 2020) ....................................................................6

*Drake v. Obama*,
 664 F.3d 774 (9th Cir. 2011) ...............................................................................4

*Harper v. Va. Dep't of Tax'n*,
 509 U.S. 86 (1993) ...............................................................................................5

*Hollingsworth v. Perry*,
 570 U.S. 693 (2013) .............................................................................................7

*Hunt v. Wash. State Apple Advert. Comm'n*,
 432 U.S. 333 (1977) .............................................................................................6

*Mecinas v. Hobbs*,
 30 F.4th 890 (9th Cir. 2022) ................................................................................4

*Ochoa v. Public Consulting Grp., Inc.*,
 48 F.4th 1102 (9th Cir. 2022) ..........................................................................7, 8

*RNC v. Burgess*,
 Case No. 3:24-CV-00198-MMD-CLB (D. Nev. May 30, 2024) ................. 2, 6, 8

*Watson v. Republican National Committee*,
 No. 24-1260 (U.S.) ..................................................................................... passim

## INTRODUCTION

On January 14, 2026, the Supreme Court published *Bost v. Illinois State Board of Elections*, 146 S. Ct. 513 (2026), where it concluded that candidates have standing to challenge vote-counting laws affecting that candidate's election. But *Bost* does not save the Complaint filed here from its deficiencies. None of the Plaintiffs/Appellants[1] are themselves candidates for office, and Plaintiffs/Appellants Republican National Committee (RNC) and Nevada Republican Party (NVGOP) do not even plead that they have current candidates for office in Nevada as members. Defendant/Appellee Nevada Secretary of State (the Secretary) thus maintains its position that this Court should affirm the district court's dismissal order.

Regardless of this Court's decision on standing, however, the Secretary urges this Court to continue to defer submission of this appeal pending the Supreme Court's decision in *Watson v. Republican National Committee*, No. 24-1260 (U.S.). The Supreme Court granted certiorari in *Watson* to determine whether the Federal Election Day statutes preempt state vote-counting statutes that allow states to count votes cast on or before election day but received shortly after election day. That question strikes at the heart of this case. Because this Court may affirm the district court's dismissal order on any ground supported by the record, and because the

---

[1] "Plaintiffs/Appellants" collectively refers to the RNC; NVGOP; Plaintiff/Appellant Donald J. Trump for President 2024, Inc. (Trump Campaign); and Plaintiff/Appellant Donald J. Szymanski (Szymanski).

1

decision in *Watson* would resolve the merits of Plaintiffs/Appellants' Complaint, this Court should wait for the Supreme Court to resolve *Watson* before it submits this appeal for decision.

## STATEMENT OF THE CASE

On May 3, 2024, Plaintiffs/Appellants filed their Complaint. ER-20. Their primary allegation is that "Nevada contravenes [the Federal Election Day statutes] by counting mail ballots that are received up to four business days after Election Day. ER-21 at ¶ 3. They allege the following injury as a result: "[T]imely, valid ballots are diluted by untimely, invalid ballots, which violates the rights of candidates, campaigns, and voters under federal law." ER-21 at ¶ 4. In sum, Plaintiffs/Appellants argue that Nevada's vote-counting statutes are preempted by federal law. ER-33 at ¶¶ 68–69.

The Secretary, along with the other defendants/appellees and intervenor-defendants/appellees, moved to dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim. *See generally* Intervenor-Defs.' Mot to Dismiss Pls.' Compl., *RNC v. Burgess*, Case No. 3:24-CV-00198-MMD-CLB, ECF No. 59 (D. Nev. May 30, 2024); Def. Sec'y of State's Mot. to Dismiss, *RNC v. Burgess*, Case No. 3:24-CV-00198-MMD-CLB, ECF No. 60 (D. Nev. May 30, 2024); and Intervenor-Defs.' Mot. to Dismiss, *RNC v. Burgess*, Case No. 3:24-CV-00198-MMD-CLB, ECF No. 71 (D. Nev. May 30, 2024). The district court

dismissed the Complaint, concluding that Plaintiffs/Appellants lacked standing. ER-17. The district court did not address the merits arguments of the motions to dismiss. *See generally* ER-4–18. Plaintiffs/Appellants appealed from the district court's dismissal based on standing.

Briefing in this appeal was completed on April 14, 2025, with oral argument set for October 22, 2025. On September 25, 2025, this Court removed this case from the oral argument calendar and deferred submission of this case "pending a decision from the United States Supreme Court in Bost v. Illinois State Board of Elections, No. 24-568." Dkt. 76.1 at 1.

The Secretary files this brief in response to this Court's Order of January 21, 2026, directing the parties to file simultaneous briefs addressing: "(1) What is the effect, if any, of Bost on the issues in this case" and "(2) Regardless of the answer to question (1), should this court continue to defer submission of this appeal pending a decision from the United States Supreme Court in Watson." Dkt. 78.1 at 1-2.

## SUMMARY OF THE ARGUMENT

*Bost* recognized that candidates possess a host of unique interests in an election that create standing for a candidate to challenge the vote-counting rules in his or her election.[2] Specifically, *Bost* rejected the suggestion that "plaintiff-candidates must show some substantial risk that a rule will cause them to lose the

---

[2] 146 S. Ct. at 523.

election, prevent them from achieving a legally significant vote threshold, or damage their reputation or finances."[3] *Bost* thus opens up the potential for standing for certain plaintiffs in cases like this one. But *Bost* does not support standing for Plaintiffs/Appellants here.

None of the Plaintiffs/Appellants in this matter are candidates for elected office in Nevada. On its face, *Bost* thus provides them no refuge. The RNC and NVGOP, at best, could claim that *Bost* buttresses their associational standing argument by making clear that their candidate-members would have standing to assert their preemption-based claims. Neither the RNC nor the NVGOP plead that they have members who are currently candidates for elected office in Nevada, however. *Bost* does not relieve the RNC or the NVGOP of their burden to plead facts sufficient to show standing. As such, this Court should affirm the district court's dismissal.

Regardless of standing, this Court should continue to defer submission of this appeal pending the Supreme Court's resolution of *Watson*. *Watson* addresses the issue at the heart of the merits underlying this case: whether the Federal Election Day statutes preempt state vote-counting statutes that allow for votes cast by or

---

[3] *Id.* at 521. Prior to *Bost*, a plaintiff could satisfy the injury-in-fact requirement for competitive standing by alleging that they were injured by the potential loss of an election. *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011). Or the plaintiff could show that she was "forced to compete under the weight of a state-imposed disadvantage." *Mecinas v. Hobbs*, 30 F.4th 890, 899 (9th Cir. 2022).

before election day but received after election day to be counted. This Court does not benefit from expending further judicial resources ahead of the Supreme Court's decision in *Watson*, which will likely be dispositive as to the merits of this case.

## ARGUMENT

### I. Plaintiffs/Appellants Do Not Adequately Plead Associational Standing, Even Under *Bost*.

In *Bost*, the Supreme Court created "a bespoke standing rule for candidates." 146 S. Ct. at 525 (Barrett, J., concurring in the judgment). *Bost*'s pronouncement on federal law now controls "in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule." *Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993).

*Bost* establishes that a candidate has Article III standing "to challenge the rules that govern the counting of votes in his election" "regardless [of] whether those rules harm their electoral prospects or increase the cost of their campaigns." *Id.* at 522–23; *see also id.* at 525 (Barrett, J., concurring in the judgment) ("By holding that a candidate always has an interest in challenging vote-counting rules, even if those rules do not impose a competitive disadvantage on him, the Court today relieves candidates of having to show any real harm.").

Here, unlike in *Bost*, no Plaintiff/Appellant is a candidate for office. *See* ER-22–23 at ¶¶ 9-20. *Bost* thus does not provide Appellants with a straightforward basis for standing. At best, *Bost* implicates the RNC's and NVGOP's associational

5

standing argument. *See* Appellants' Opening Brief (OB) at 40 ("The RNC and NVGOP also have standing as a representative of their political-candidate members.").[4] Both on appeal and below, however, the Secretary has noted for the benefit of the courts that neither the RNC nor the NVGOP have members who would have standing on their own to sue.[5] Answering Brief (AB) at 39–41; and Def. Sec'y of State's Mot. to Dismiss at 1–15, *RNC v. Burgess*, Case No. 3:24-CV-00198-MMD-CLB, ECF No. 60 (D. Nev. May 30, 2024).

Notably absent from the pleadings is any allegation by the RNC and NVGOP that either has, as members, current candidates running for office in Nevada.[6] *See*

---

[4] "An entity may establish associational standing to bring suit on behalf of its members when: (1) 'its members would otherwise have standing to sue in their own right;' (2) 'the interests it seeks to protect are germane to the organization's purpose;' and (3) 'neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 999 (D. Nev. 2020) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

[5] *Bost* does not change the fact that Syzmanski, as an individual who is not a candidate for office in Nevada, lacks standing. *See* ER-23 at ¶ 20; *see also Bost*, 146 S. Ct. at 522–23. Nor does it impact the fact that the Trump Campaign is not a candidate, ER-23 at ¶¶ 18–19, and even if it was a candidate, the Trump Campaign "represents only Donald J. Trump and his 'electoral and political goals' of reelection"; it "does not represent Nevada," and thus, it "fails to satisfy the second prong of associational standing: the interests of the voters are not 'germane to the organization's purpose.'" *Donald J. Trump for President, Inc.*, 488 F. Supp. 3d at 999 (quoting *Hunt*, 432 U.S. at 343).

[6] The RNC pleads only that "[i]n November 2024, its candidates will appear on the ballot in Nevada for election to the Presidency, U.S. Senate, and U.S. House of Representatives." ER-22 at ¶ 12. But those elections have passed. The mere fact that, at one point in the past, the RNC had candidate members in Nevada does not satisfy

*generally* ER-19–36. The Complaint speaks only of general harms to generic Republican candidates. ER-30 at ¶ 56 ("Because voting by mail is starkly polarized by party, that dilution directly and specifically harms Plaintiffs."); ER-32 at ¶ 60 ("Counting mail ballots received after Election Day doesn't just dilute the valid ballots—it specifically and disproportionately harms Republican candidates and voters."). Thus, while *Bost* may have given candidates broader standing to challenge vote-counting laws, it does not save Plaintiffs/Appellants from their deficient pleading.

Because this Court may affirm the district court's decision on any basis fairly supported by the record,[7] it should affirm the district court's dismissal order regardless of *Bost*.

## II. This Court Should Continue to Defer Submission of this Appeal Pending a Decision from the United States Supreme Court in *Watson*.

Regardless of *Bost*, this Court should continue to defer submission of this appeal pending the Supreme Court's decision in *Watson v. Republican National Committee*, No. 24-1260 (U.S.). In *Watson*, "[t]he question presented is whether the federal election-day statutes preempt a state law that allows ballots that are cast by federal election day to be received by election officials after that day." Br. for Pet'r

---

the RNC's obligation to have standing at all stages of litigation. *See Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013).

[7] *Ochoa v. Public Consulting Grp., Inc.*, 48 F.4th 1102, 1106 (9th Cir. 2022).

at i, *Watson v. Republican Nat'l Comm.*, No. 24-1260 (U.S. Jan. 2, 2026). This preemption question is the heart of Plaintiffs/Appellants' Complaint. *See* ER-33 at ¶ 69, ER-33–34 at ¶¶ 72–82. The Supreme Court set *Watson* for oral argument on March 23, 2026—less than a month away.

*Watson* will resolve the merits of this case, and a disposition should come by the end of the October 2025 Term. Even though the district court's dismissal order did not reach this issue, the Secretary argued that Plaintiffs/Appellants failed to state a claim for relief because the Federal Election Day Statutes do not preempt Nevada's vote-counting statutes. Def. Sec'y of State's Mot. to Dismiss at 15–21, and *RNC v. Burgess*, Case No. 3:24-CV-00198-MMD-CLB, ECF No. 60 (D. Nev. May 30, 2024). On appeal, the Secretary, as well as other Defendants/Appellees, raised this argument as an alternative basis to affirm the district court's dismissal order. *See, e.g.*, AB at 41–49; Answering Br. of Democratic Nat'l Comm. at 20–47. Since this Court may affirm the district court's dismissal order on this alternative ground, it should continue to defer submission of this case pending the resolution of *Watson*. *Ochoa*, 48 F.4th at 1106.

/ / /

/ / /

/ / /

8

## CONCLUSION

This Court should affirm the district court's order, regardless of *Bost*. The Secretary recommends, however, that this Court continue to defer submission of this appeal pending the Supreme Court's resolution of *Watson*.

DATED this 27th day of February 2026.

AARON D. FORD
Attorney General

By: */s/ Heidi Parry Stern*
Heidi Parry Stern (Bar No. 8873)
  Solicitor General
Daniel R. Brady (Bar No. 15508)
  Deputy Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, Nevada 89119
(702) 486-3420
hstern@ag.nv.gov
drbrady@ag.nv.gov

*Attorneys for Defendant/Appellee Nevada Secretary of State*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 24-5071

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** __/s/ Heidi Parry Stern_____ **Date** _02/27/2026_____
*(use "s/[typed name]" to sign electronically-filed documents)*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-5071

I am the attorney or self-represented party.

**This brief contains 2,041 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[X] complies with the length limit designated by court order dated 1/21/2026.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s/ *Heidi Parry Stern*_____ **Date** _02/27/2026_____
*(use "*s/[typed name]*" to sign electronically-filed documents)*